NATHANIEL P. LOVERING & another, trustees, *vs.* NATHANIEL
P. LOVERING & others.

Suffolk. November 25, 1879. — June 30, 1880.

A testator devised certain real estate to trustees in trust to pay the income thereof
to his daughter N. during her life; on her decease, to pay the income of a cer-
tain portion of such estate to her daughters A. and M. during their lives, and
upon their decease, to convey "said estate" in fee to the heirs at law of A.
and M.; upon the decease of N., to pay the income of the remaining portion
of the estate "to her children" during their lives, "and as the children of N.
successively decease," said remaining portion was "to be conveyed in fee to
the heirs at law of all the children of N." At the death of the testator, N. was
fifty-five years of age, and had children living. *Held,* that the devise of life
estates to the children of N. included children born after the death of the tes-
tator; and, it being conceded that, if such was the case, the limitation over to
the heirs of such children was void for remoteness, that the estate thus limited
passed under the residuary clause of the will, which devised "all the rest, resi-
due and remainder of my estate, real and personal, of every nature and descrip-
tion," although certain other remainders and reversions were therein specified
as coming within this general description.

BILL IN EQUITY by the trustees under the will of Joseph
Lovering to obtain the instructions of the court. The case was
reserved on the bill and answers by *Ames,* J., for the considera-
tion of the full court, and was as follows:

The testator died on June 30, 1848. His will, which was duly
admitted to probate, by the thirteenth article, devised to trustees
two stores on State Street, a house on Tremont Street and a
house on Hollis Street, all in Boston, in trust to pay the net
rents and profits to his daughter Nancy Gay, during her life,
" and upon this further trust, upon the decease of said Nancy, to
pay over to her daughters Ann L. Gay and Martha Gay the net
rents and income of" the Hollis Street estate, " during their
lives, and on the decease of said Ann and Martha, successively,
to convey in fee, or, in case said estate should be sold, pay over
and distribute the proceeds to and among the heirs at law of said
Ann and Martha. And on this further trust, upon the decease
of said Nancy Gay, to pay the net income of said two stores in
State Street, and of said house on Tremont Street, to her chil-
dren, half yearly, or oftener if convenient to said trustees, during
the lives of said children. And as the children of said Nancy
shall successively decease, said stores in State Street and said

house in Tremont Street are to be conveyed in fee, or in case the same be sold, the proceeds are to be paid and distributed to and among the heirs at law of all the children of said Nancy, that is to say, that as said Nancy's children shall successively decease, a proportion of said estate, or the proceeds, are to be conveyed or distributed to and among the respective heirs at law of each child so deceasing, said Nancy's grandchildren to take in right of representation of their deceased parents."

By other articles of the will provisions similar in substance were made for his sons Nathaniel and Joseph and their children.

By the nineteenth article of the will the testator gave to the same trustees " all the rest, residue and remainder of my estate, real and personal, of every nature and description, including the reversion and remainder of all sums of money hereinbefore given to said trustees for the support of life annuities to my wife and children, and the widows of my children, and not given over, after the decease of the annuitants, together with all the estates, real and personal, which may be released to my trustees by the heirs or assigns of George Gay, Esq., and by my wife, and all my property or estate not bequeathed or devised in this will, whether in possession or reversion," in trust to pay the net income to his five children during their respective lives. " And on this further trust, on the decease of my said five children, successively, to convey in fee, pay, deliver over and distribute the same residue and remainder of all my estate, real and personal, or the proceeds thereof, and all estates, property, stocks and securities in which the same may be invested, to and among my grandchildren and the lineal descendants of my deceased grandchildren, that is to say, as each of my five children shall successively decease, one fifth part of said residue and remainder at the death of each child shall be distributed and divided to and among all my grandchildren then living and the lineal descendants of my deceased grandchildren: my said grandchildren to take *per capita*, and the lineal descendants of deceased grandchildren to take in right of representation of their deceased parents."

At the death of the testator, there were five children of his living, namely, William Lovering, aged sixty-two years, Nancy

Gay, aged fifty-five, Caroline Worthington, aged fifty-two, Joseph Lovering, aged forty six, and Nathaniel P. Lovering, aged forty. William died, April 27, 1869; Nancy, February 12, 1870; Caroline, April 30, 1877; and Joseph, on August 8, 1875. There were also living at the death of the testator a large number of grandchildren; and after his death there were only four grandchildren born, and these were children of the testator's son Joseph. George H. Gay, a son of Nancy Gay, died on August 12, 1878. There are now living a son of the testator, Nathaniel P., grandchildren, great-grandchildren and great-great-grandchildren, whose names were set forth in the bill.

The trustees asked the court to instruct them upon the following points :

" First. Whether the limitations of said trust estate, to wit, of the two stores on State Street and of the house on Tremont Street, are valid beyond the life estates limited to the children of said Nancy, or are void as tending to create perpetuities in contravention of law.

" Second. Whether, if said limitations are void, the trust estates before mentioned pass by descent to said testator's heirs at law, or fall within the operation of the residuary clause of said will.

" Third. If said trust estates fall within the operation of the residuary clause of said will, whether the share of said George H. Gay, deceased, which it is now the duty of the trustees to divide and distribute, should be divided into five equal parts, of which four parts are to be divided and distributed among those grandchildren of the testator, and their lineal descendants, who were living at the respective deaths, — William Lovering, Nancy Gay, Joseph Lovering, Jr., and Caroline Worthington, — one part being divided among each class of grandchildren, and the fifth part be paid into the residuary fund; or how otherwise it should be divided and distributed."

*H. W. Paine,* for the children of George H. Gay.

*A. Russ & D. A. Dorr,* for other defendants.

MORTON, J. The thirteenth clause of the will of Joseph Lovering, in regard to which the plaintiffs by this bill seek the instructions of the court, was considered in *Lovering* v. *Worthington,* 106 Mass. 86 ; and it was held that the limitation of life

estates to the children of Mrs. Nancy Gay after her decease was not void for remoteness. The question now presented, which has arisen by the subsequent death of her son, George H. Gay, whether the limitation over of the fee to the heirs at law of the children of Mrs. Gay is void, was not considered. It is conceded that, if the devise of life estates to the children of Mrs. Gay would include children born after the death of the testator, the limitation over to the heirs of such children is void for remoteness. We are of opinion that it would include after-born children. It is a testamentary gift to a class which is made by the testator to take effect at a period later than his death. The general rule is that those who come within the description before the gift is to take effect will be included within the class as being within the intention of the testator. We see nothing in this will which indicates that it was the intention of the testator that this rule should not apply in its construction. His purpose was to make provision for all his grandchildren who should be living at the death of their respective parents. He makes the same provisions substantially in favor of his sons Nathaniel and Joseph and their children, the latter of whom had in fact several children born after the death of the testator. There is no rule of construction by which these after-born children can be excluded from the bounty of their grandfather. It is true that it was not probable that Mrs. Gay would have after-born children; but it was possible, and the question of remoteness must be determined with regard to possible events, and not to those which actually or may probably occur. We are, therefore, of opinion that the limitation over to the heirs at law of the children of Mrs. Gay is in violation of the rule of law against perpetuities, and is void.

This being so, the estate thus limited over passes under the residuary clause of the will. A general residuary gift carries all property which is not otherwise disposed of by the will, and includes all lapsed legacies and all void legacies. *Bigelow* v. *Gillott*, 123 Mass. 102. In this case, the residuary gift is of " all the rest, residue and remainder of my estate, real and personal, of every nature and description." The fact that he specifies certain remainders and reversions as included within this general description, does not limit or narrow it. It was plainly intended, as is said in a later part of the same clause, to include

" all my property and estate not bequeathed or devised in this will, whether in possession or reversion." Such a clause includes void legacies, in the absence of any evidence of a distinct intention to the contrary. This subject is fully discussed in *Thayer* v. *Wellington*, 9 Allen, 283, which, upon this point, is decisive of the case at bar. We do not understand that there is any controversy as to the proper disposition of this share of which George H. Gay was the life tenant, and which has now fallen into the residuary fund. The provisions of the residuary clause are clear and explicit. As one only of the five children of the testator is now living, one fifth of the fund is to be held in trust for his benefit during his life. The remainder is to be divided into four parts, of which one part is to be distributed in the same manner as if it had formed a part of the residuary fund at the death of William Lovering, and the other three as if they had respectively formed parts at the respective deaths of Nancy Gay, Caroline Worthington and Joseph Lovering; and each part is to be divided among all the grandchildren of the testator living at said respective times, and the lineal descendants of any deceased grandchildren, if any, the grandchildren to take equally *per capita*, and the lineal descendants of any deceased grandchild to take in right of representation of their deceased parent, that is, the share which their parent would have taken if living.

*Decree accordingly.*