JOHN DORR & others *vs.* NATHANIEL P. LOVERING & others.

Suffolk.    January 30, 1888. — October 22, 1888.

Present: MORTON, C. J., DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Devise in Trust — Remoteness.*

A testator devised certain real estate to trustees, in trust, to pay the income thereof to his daughter N. during her life; on her decease, to pay the income of a certain portion of such estate to her daughters A. and M. during their lives, and, upon their decease, to convey "said estate" in fee to the heirs at law of A. and M.; upon the decease of N., to pay the income of the remaining portion of the estate "to her children" during their lives, and "as the children of N. successively decease" such remaining portion was "to be conveyed in fee to the heirs at law of all the children of N." At the death of the testator, N. had children living, and it was possible that she might have a child born afterwards. *Held,* that the devise over to the children of N. was of distinct shares, and that the limitation over to the heirs at law of such children as were living at the death of the testator was not void for remoteness, and that the possible partial invalidity of the devise in case of an after-born child to N. would not defeat the devises to such children.

BILL IN EQUITY, filed April 19, 1887, by grandchildren and lineal descendants of deceased grandchildren of Joseph Lovering, against the trustees under his will and the heirs at law of Ann L. Gay, to compel the distribution of her share in a trust estate created by the will.

The case was heard, upon the bill and answers, before *C. Allen*, J., who ordered a decree for the plaintiffs; and the heirs at law of Ann L. Gay appealed to the full court. The facts appear in the opinion.

*J. C. Gray*, for the heirs at law.

*A. Russ*, (*D. A. Dorr* with him,) for the plaintiffs.

MORTON, C. J. Joseph Lovering, by the nineteenth article of his will, gave to trustees " all the rest, residue, and remainder of my estate, real and personal, of every nature and description," in trust, to pay the net income to his five children during their respective lives, and upon the further trust, on the decease of such five children successively, to convey in fee the same residue and remainder to and among his grandchildren and the lineal descendants of his deceased grandchildren.

By the thirteenth clause of his will, which was duly admitted to probate on December 19, 1848, he devised to the same trustees two stores in State Street, a house in Tremont Street, and a house in Hollis Street, all in Boston, " in trust, to take the rents, profits, and income of said real estate, and, after deducting all necessary charges and expenses attending the care and management of said estates, to pay the net balance of such rents and profits to my said daughter, Nancy Gay, during her life, on her personal receipt or written order only, half-yearly, or oftener if convenient to my trustees. And upon this further trust, upon the decease of said Nancy, to pay over to her daughters, Ann L. Gay and Martha Gay, the net rents and income of said estate in Hollis Street, half-yearly, or oftener if convenient to said trustees, during their lives; and on the decease of said Ann and Martha successively, to convey in fee, or, in case said estate should be sold, pay over and distribute the proceeds to and among the heirs at law of said Ann and Martha. And on this further trust, upon the decease of said Nancy Gay, to pay the net income of said two stores in State Street, and of said house in Tremont Street, to her children, half-yearly, or oftener

if convenient to said trustees, during the lives of said children. And as the children of said Nancy shall successively decease, said stores in State Street, and said house in Tremont Street, are to be conveyed in fee, or, in case the same be sold, the proceeds are to be paid and distributed to and among the heirs at law of all the children of said Nancy; that is to say, that, as said Nancy's children shall successively decease, a portion of said estate, or the proceeds, are to be conveyed or distributed to and among the respective heirs at law of each child so deceasing, said Nancy's grandchildren to take in right of representation of their deceased parents."

The latter clause of the will has been twice before the court. In *Lovering* v. *Worthington*, 106 Mass. 86, it was held that the limitation of life estates to the children of Nancy Gay was not void for remoteness. In *Lovering* v. *Lovering*, 129 Mass. 97, the precise question now raised was decided. It was held that the limitation over to the heirs of George H. Gay, a son of Nancy, was void for remoteness. But the only question argued in that case was whether the devise of life estates to the children of Nancy Gay opened to let in children born after the death of the testator. The counsel for the grandchildren conceded that, if after-born children were included in the devise, the limitation over to the heirs of the children of Nancy Gay was void for remoteness. The court therefore did not discuss this question, but, accepting the concession of the counsel, considered only the questions argued by him.

Under these circumstances, we feel bound to consider the question now raised as if it were a new question.

The general rule is well settled, that, in judging of the question of the remoteness of an executory devise, we must take our stand at the death of the testator, and that such devise is void unless it takes effect *ex necessitate*, and in every possible contingency, within the period of a life in being and twenty-one years afterwards. *Hall* v. *Hall*, 123 Mass. 120, and cases cited.

In the case at bar, it was possible, at the death of the testator, that Nancy Gay might have a child born afterwards, and that all her children living at the death of the testator might die during her life. If the will is to be construed as giving life estates to the children of Nancy Gay who might be living at

her death, it might result that the after-born child would be the
only child then living, and would take a life estate in the whole
of the property; and in that event, the limitation over to the
heirs at law of such after-born child would be void for remote-
ness, because it would not take effect until the end of the life of
its parent, — a life not in being at the death of the testator.   If
this was so, it would seem that the whole devise would be void
for remoteness under the rule we have stated.

But, upon careful consideration, we are of opinion that the will
cannot be thus construed, and that the case falls within the de-
cision in *Hills* v. *Simonds*, 125 Mass. 536.   In that case the will
of Jonathan Simonds devised the residue of his estate to trustees,
to pay the income to his son for life, and upon his death without
issue to divide the estate "among my nephews and nieces as
follows, to wit, the children of my brother Joshua, my brother
William, my sister Martha Merriam, and my sister Elizabeth
Parker, during their natural lives, and after their decease to be
equally divided among their children or their legal representa-
tives."   The will was before the court for adjudication several
times. . In *Simonds* v. *Simonds*, 112 Mass. 157, and *Simonds* v.
*Simonds*, 121 Mass. 191, it was held that the son took an estate
for life, and that the devise over of a life estate to the nephews
and nieces was not void for remoteness.   In *Merriam* v. *Simonds*,
121 Mass. 198, it was held that the nephews and nieces of the
testator, who were included in the description, took estates which
vested at the death of the testator; that, at the termination of
the first life estate, each of those then living was entitled to a
life estate in possession in his or her share of the estate; that
the children or legal representatives of those who had died dur-
ing the first life estate were entitled to an absolute estate in the
share of their ancestor; and that thereafter, upon the death of
each life tenant, his or her share was to be divided among his or
her children or legal representatives.

After these decisions came the case of *Hills* v. *Simonds*, *ubi
supra*, in which the question of the validity of the devise over
to the children or legal representatives of the nephews and
nieces was for the first time raised.   The case was presented
of a devise of a life estate to the testator's son, with a limitation
over of life estates to certain described nephews and nieces, and

with further limitations over, not of the whole estate to a single class of persons, but of the particular and separate share of each nephew or niece to his or her children or legal representatives. Construing this will as at the death of the testator, it is not possible that the whole estate, by virtue of the ultimate limitation over, could vest at too remote a period in the children of an after-born nephew or niece. Assuming that the devise to nephews and nieces would open to let in after-born nephews and nieces, yet the share which each is to take must be ascertained at the end of lives in being at the death of the testator; at the death of the first life tenant, each nephew and niece then living had a vested life estate in a defined independent share of the estate, and the children of those who had died had an absolute estate in their ancestor's share. The shares of each nephew and niece then became ascertained, and distinct and separate from the shares of the others, and separate and independent limitations over attached and applied to each share. We think it was correctly held that the ultimate limitation over, which applied to the respective shares of the nephews and nieces who were living at the death of the testator, was not void for remoteness, as the remotest period at which such devises over must take effect is the end of the respective lives of such nephews and nieces. We have carefully reconsidered this case, because, as we have before stated, the case at bar cannot be distinguished from it.

Mrs. Nancy Gay, who died on February 12, 1870, had eight children living at the death of the testator, and none were born to her afterwards. We will suppose, for the purposes of the discussion, that she had had a son born after the testator's death. We are of opinion that the living children took life estates expectant upon their mother's death, which vested at the death of the testator, and in the case of the after-born son his estate would vest at his birth. The general rule is, that, where a will gives a life estate to one, with a devise over, either for life or in fee, to a definite class of persons, the presumption is that those take who constitute the class at the death of the testator, unless the will shows a different intention. *Merriam* v. *Simonds*, *ubi supra*, and cases cited. *McArthur* v. *Scott*, 113 U. S. 340. There is nothing in this will to take the case out of this rule. On the contrary, if we were to adopt a different construction, the result would

be, that, in case any of the children of Nancy Gay should die before their mother, leaving children, such children would take nothing, a result which would defeat the clear intention of the testator.

It has already been decided, that, whether there are after-born children or not, the devise of life estates to the children of Nancy Gay is valid. Upon the death of Nancy Gay, the precise share of each child is ascertained and determined. Now, what are the limitations over upon the termination of these life estates? The will provides that, " as the children of said Nancy shall successively decease, said stores in State Street and said house in Tremont Street are to be conveyed in fee, or, in case the same be sold, the proceeds are to be paid and distributed to and among the heirs at law of all the children of said Nancy"; if the provision stopped here, a question of difficulty would be presented, but to explain what is meant, the will proceeds: " that is to say, that, as said Nancy's children shall successively decease, a portion of said estate, or the proceeds, are to be conveyed or distributed to and among the respective heirs at law of each child so deceasing, said Nancy's grandchildren to take in right of representation of their deceased parents."

This provision does not contemplate any survivorship among the life tenants, or that the final division among the heirs is to be postponed until the death of the last life tenant. On the contrary, it clearly means that, upon the death of each life tenant, his share shall be divided among his heirs at law, and so on upon each successive death of the children of Nancy Gay. It contemplates that at the death of Nancy Gay each of her children is to have a separate and independent share, and it looks to separate and independent divisions of each share at different times and to different persons. As each child dies, his heirs are to take; they may be his children, or his brothers and sisters, if he has no children. Upon their successive deaths, their heirs must be different persons. Thus the devise over is not a devise to a single class, of which the issue of an after-born child of Nancy is a member, to take effect at the end of a life not in being at the death of the testator.

The intention of the testator cannot be carried out except by regarding the provision as separate and distinct devises to differ-

ent classes, which take effect at different times, upon the respective deaths of the life tenants. The legal heirs of each child, upon his death, take his share of the estate; and as the devise to the heirs takes effect at the death of their ancestor who had the life estate, it follows that in the case of all the children who were living at the death of the testator the devise over is not void for remoteness. In the case supposed, of the after-born son, the devise over would be invalid; but this would not affect the distinct devises in favor of the heirs of his brothers or sisters, because the estates devised to them must vest within the period prescribed by law. We are compelled to the conclusion that the concession of counsel and the decision of the court in *Lovering* v. *Lovering, ubi supra,* to the effect that the gifts over to the heirs at law of the children of Nancy Gay were void for remoteness, are erroneous. *Cattlin* v. *Brown,* 11 Hare, 372. *Griffith* v. *Pownall,* 13 Sim. 393. *Wilkinson* v. *Duncan,* 30 Beav. 111. *Storrs* v. *Benbow,* 3 DeG. M. & G. 390. *Pearks* v. *Moseley,* 5 App. Cas. 714.

The result is, that the heirs at law of Ann L. Gay, who died on November 8, 1886, are entitled, under the thirteenth clause of the will, to the property in which she had a life interest under the clause we have discussed, being her share of the property originally consisting of the stores in State Street and the house in Tremont Street.                     *Decree accordingly.*