Edward C. Burns, Individually and as Executor, etc., of Charlotte O. Black, Deceased, and Walter S. Harsha, as Executor, etc., of Charlotte O. Black, Deceased, Respondents, v. Augustus F. Allen and Alfred D. Allen, Infants, by Virginia M. Allen, their General Guardian, Appellants; Melita Black and Another, Respondents, Impleaded with Others.

*Will — when legacies are not chargeable upon real estate — dependent and independent clauses — suspension of the power of alienation.*

The general rule of construction is that an estate in remainder is vested rather than contingent unless something appears in the instrument to indicate that the intent of the donor was otherwise.

The will of a testatrix contained the following provisions:

" *First.* After all my lawful debts are paid and discharged, I give and bequeath to my nephews, Augustus F. Allen and Alfred D. Allen, the sum of one thousand dollars each. * * *"

" *Fourth.* I give and bequeath to Edward C. Burns, for the term of his natural life, and in case of his death to Mary G. Burns, as long as she shall remain a widow, the use of my house and lot, on the corner of Fifth and Spring streets in the city of Jamestown, New York, together with the use of my household furniture. On the completion of the life tenancy as above, I direct the aforesaid house and lot and household furniture to be held in trust for my adopted daughter, Melita Black, and Isabella S. Burns, or the survivor of them."

" *Seventh.* I give to my executor or executors hereafter named all my interest in the wheat farm of the Brown Bros. (and other real property) subject to the conditions of the preceding clause. All of said enumerated property, together with the rest, residue and remainder of my estate of every kind whatsoever, to be held in trust for my adopted daughter, Melita Black (with power of sale). The income arising from said trust estate, or so much thereof as may be necessary, to be used in the education and support of Melita. Directing and authorizing my said executor or executors, however, from said trust estate, to provide a sufficient sum to afford Isabella S. Burns like educational advantages as are afforded to Melita. Should the income of said trust estate be insufficient to carry out this provision of this clause, then so much of the principal may be used as may be necessary for that purpose. Should Melita marry without the

full consent of Edward C. and Mary G. Burns, then only so much of the income arising from said trust estate be paid her as shall be absolutely necessary for her support.

" *Eighth.* Should Melita die without leaving issue, I direct that the aforesaid trust estate be divided equally between my nephews, Augustus F. Allen and Alfred D. Allen, and Isabella S. Burns, or the survivors of them.

' *Ninth.* Should Melita leave children surviving her, I direct that the said estate be held in trust for said child or children until the youngest of said children reaches the age of twenty-one years. The estate then to be divided equally between such children, and, in case none of said children reaches the age of twenty-one years, the remainder of said estate to be divided as provided in the preceding clause."

In an action brought to obtain a judicial construction of said will the only evidence relating to the personal estate of the testatrix was the testimony of one of the executors of the will, who testified that at the death of the testatrix "there was not enough personal property of the testatrix to pay her debts, to the best of my belief;" there was no evidence given of the nature of her personal estate at the time the will was made, nor of the extent or value of it other than such inference as was derivable from the testimony of such executor; the will was made in September, 1886, and the testatrix died the following January.

*Held,* that it did not appear to have been the intention of the testatrix to make the legacies bequeathed in the first clause of her will a charge upon her real estate;

That the disposition of the property by the provisions of the fourth clause of the will, so far as it related to the beneficiaries therein mentioned, was independent of the other provisions of the will; that the suspension of alienation of the estate therein referred to terminated with the tenancies of Burns and his wife, and that the power of alienation of the real estate and the absolute ownership of the personal property therein mentioned was not unlawfully suspended thereby;

That by the provisions of the seventh clause a valid trust was created, and for the purpose of its execution, as in said clause provided, they were complete and independent of the provisions of the will which follow;

That while the devolution of the estate in the events mentioned in the eighth and ninth clauses of the will was within the scheme which the testatrix had in view, the seventh and ninth clauses were not so united as to render the execution of the trust contained in the seventh clause in any sense dependent upon the validity of the trust created by the ninth clause.

APPEAL by the defendants, Virginia M. Allen, as general guardian, etc., of Augustus F. Allen and another, and Augustus F. Allen and another, by their guardian, etc., from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of

the clerk of the county of Chautauqua on the 30th day of January, 1895, upon the decision of the court rendered after a trial at the Chautauqua Special Term.

The purpose of the action was to obtain a judicial construction of the will of the plaintiffs' testatrix. And the controversy had relation to the first, fourth, seventh, eighth and ninth clauses of the will, which were as follows:

"*First.* After all my lawful debts are paid and discharged, I give and bequeath to my nephews, Augustus F. Allen and Alfred D. Allen, the sum of one thousand dollars each ($1,000), said sums to be expended upon their education, and for no other purpose whatever. In case either or both of said nephews should die before the above-mentioned sum or sums are expended as directed above, I direct that the sum or sums be given to Isabella S. Burns, daughter of Edward C. Burns."

"*Fourth.* I give and bequeath to Edward C. Burns, for the term of his natural life, and in case of his death to Mary G. Burns, as long as she shall remain a widow, the use of my house and lot, on the corner of Fifth and Spring streets in the city of Jamestown, New York, together with the use of my household furniture. On the completion of the life tenancy as above, I direct the aforesaid house and lot and household furniture to be held in trust for my adopted daughter, Melita Black, and Isabella S. Burns, or the survivor of them."

"*Seventh.* I give to my executor or executors hereafter named all my interest in the wheat farm of the Brown Bros. & Preston Company, Blanchard, Trail county, Dakota; my land in Lansing, Michigan; fifty-five (55) and one-half acres of land in Dexterville or East Jamestown; the 'homestead,' subject to the conditions of the preceding clause. All of said enumerated property, together with the rest, residue and remainder of my estate of every kind whatsoever to be held in trust for my adopted daughter, Melita Black, giving to my said executor or executors full power to sell any or all of said real estate or corporate interest at public or private sale at such time and upon such terms as they may deem best in the peaceful execution of their trust, and to give good and sufficient deeds for the same. The income arising from said trust estate, or so much thereof as may be necessary, to be used in the education and sup-

port of Melita. Directing and authorizing my said executor or executors, however, from said trust estate, to provide a sufficient sum to afford Isabella S. Burns like educational advantages as are afforded to Melita. Should the income of said trust estate be insufficient to carry out this provision of this clause, then so much of the principal may be used as may be necessary for that purpose. Should Melita marry without the full consent of Edward C. and Mary G. Burns, then only so much of the income arising from said trust estate be paid her as shall be absolutely necessary for her support.

"*Eighth.* Should Melita die without leaving issue, I direct that the aforesaid trust estate be divided equally between my nephews, Augustus F. Allen and Alfred D. Allen, and Isabella S. Burns, or the survivors of them.

"*Ninth.* Should Melita leave children surviving her, I direct that the said estate be held in trust for said child or children until the youngest of said children reaches the age of twenty-one years. The estate then to be divided equally between such children, and, in case none of said children reaches the age of twenty-one years, the remainder of said estate to be divided as provided in the preceding clause."

The trial court determined that the legacies mentioned in the first clause were not a charge upon any of the real estate left by the testatrix; that by the fourth clause an estate in remainder was devised to Melita Black and Isabella S. Burns as tenants in common, or to the survivor of them; that by the provisions of the seventh clause a valid trust was created, and that in the event mentioned in the eighth clause the persons there mentioned, or the survivors or survivor of them, would take the estate there referred to.

*A. C. Wade* and *Noah Davis*, for the appellants.

*Robert G. Shaw* and *George Barker*, for respondents Melita Black and Isabella S. Burns.

*Stillman F. Kneeland*, for plaintiffs, respondents.

BRADLEY, J.:

The legacies bequeathed to the appellants are not expressly charged upon the real estate of which the testatrix died seized by

any provision of the will, nor does it furnish any indication of her intent to that effect. (*Matter of City of Rochester*, 110 N. Y. 159; *Brill* v. *Wright*, 112 id. 129; *Morris* v. *Sickly*, 133 id. 456.)

But it is urged that extrinsic circumstances appearing by the evidence required the conclusion that the intention of the testatrix was that those legacies should be a charge upon the realty. If that contention is supported they are entitled to that advantage. (*McCorn* v. *McCorn*, 100 N. Y. 511; *Briggs* v. *Carroll*, 117 id. 288.)

The appellants were nephews of the testatrix, and at the time of her death they were her only heirs and next of kin. Her will was made in September, 1886, and she died in January following.

The intention in that respect, so far as it is to be ascertained by extrinsic facts, is dependent upon the circumstances as they existed and appeared at the time her will was made, and to thus establish the charge of the legacies upon the real estate it must clearly appear that the intent of the testatrix to make them so was manifested. Such intention may be inferred where it appears that the personal estate of the testator, at the date of his will, is largely and clearly insufficient to pay the legacies, and that the testator must have then known and understood that their payment could not be made without the aid of the real estate.

In *Briggs* v. *Carroll* (*supra*) it was said, in the opinion of the court delivered by Judge FINCH, that "the deficiency must exist when the will is executed, and be so great and so obvious as to preclude any possible inference that the testator did not realize it, or that he may have expected and intended before his death to remove the difficulty."

In the present case the only evidence relating to the personal estate of the testatrix is in the testimony of the person who is an executor of the will, that "there was not enough personal property of the testatrix to pay her debts to the best of my belief." This statement was made in reference to the personal estate after the death of the testatrix and in view of the debts as they then existed. There is no evidence of the nature of her personal estate at the time the will was made, nor of the extent or value of it other than such inference as is derivable from that before mentioned. This is not sufficient to fairly require the conclusion that, four months before her death, there was an obvious deficiency of personal property to

pay the legacies in view of her debts as they then existed. It, therefore, does not appear to have been the intention of the testatrix to make those legacies a charge upon the real estate.

In the view taken of the fourth clause of the will the contention that, by its provisions, the power of alienation of the real estate and the absolute ownership of the personal property therein mentioned are unlawfully suspended, is not sustained.

The purpose of the testatrix evidently was, that Edward C. Burns, during his life, and Mary G. Burns, if she survived him, so long as she remained his widow, should have the use of the property, and the limitation over was to the use of Melita Black and Isabella S. Burns, without the creation of any trust by that clause of the will. If the use were restricted to the income it may be that the executors, although not named in that connection, might be treated as the trustees without the expression of any devise to them, and a trust deemed created within the statute. (1 R. S. 729, § 55.) But the provision in that clause giving Melita and Isabella the beneficial enjoyment of the remainder of the estate in that property without the intervention of any recognized trust in another, gave to them the estate in remainder, not cut down by the declaration of a mere passive or naked trust. (1 R. S. 727, 728, §§ 47, 49.) And such must be deemed the legal effect of the devise to them unless there is elsewhere in the will some qualification of the provisions of the fourth clause in that respect. (*Rawson* v. *Lampman*, 5 N. Y. 456; *Syracuse Savings Bank* v. *Holden*, 105 id. 415; *Greene* v. *Greene*, 125 id. 506.)

The disposition of this property, by the provisions of the fourth clause, so far as relates to the beneficiaries there mentioned, seems to be independent of the other provisions of the will, and, therefore, the suspension of alienation of the estate therein referred to terminates with the tenancies of Burns and his wife.

The trial court determined that the devise of the remainder to Melita Black and Isabella S. Burns, or to the survivor of them, is to take effect as of the time of the termination of the prior estates. If it were necessarily here, the question whether or not the estate in remainder vested in the persons last named at the time of the death of the testatrix would be worthy of some consideration. The general rule of construction is that an estate in remainder is vested

rather than contingent unless something appears in the instrument to indicate that the intent of the donor was otherwise. (*Moore* v. *Lyons*, 25 Wend. 119; *Livingston* v. *Greene*, 52 N. Y. 118; *Kelly* v. *Kelly*, 61 id. 47; *Matter of Mahan*, 98 id. 372; *Nelson* v. *Russell*, 135 id. 137; *Jennings* v. *Barry*, 5 Dem. 531.)

By the seventh clause the executors take the property there referred to in trust for Melita Black, and in execution of such trust are to apply the income of that estate, or so much of it as may be necessary, to her education and support. They are also directed to use sufficient of the income to give Isabella S. Burns like educational advantages, and if the income is not sufficient, they are to appropriate so much of the *corpus* of the fund to these objects as may be necessary for such purposes. To this, standing alone, there can be no objection going to its validity. The eighth clause follows, giving directions for the ultimate disposition of this trust estate in the event that Melita Black dies without issue. Thus far there is no illegal suspension of alienation or ownership of the estate.

But it is urged that the seventh and eighth clauses are rendered invalid by the provisions of the ninth clause, which is to the effect that if Melita leaves children surviving her the estate is to be held in trust until the youngest of them arrives at the age of twenty-one years, when it is to be divided between them. There might be some force in this contention if the provisions of the seventh clause were dependent upon those of the ninth clause. (*Rice* v. *Barrett*, 102 N. Y. 161.)

But they are not. The provisions of the seventh clause created the trust, and for the purpose of its execution as there provided they are complete and independent of those which follow. While the devolution of the estate in the events mentioned was within the scheme which the testatrix had in view, when she made the several provisions of her will, those of the seventh and ninth clauses are not so united as to render the execution of the former in any sense dependent upon the validity of the latter. (*Savage* v. *Burnham*, 17 N. Y. 561; *Kennedy* v. *Hoy*, 105 id. 134.)

The question of the validity of the ninth clause had no consideration by the trial court, and none is necessary to the result on this review.

The judgment should be affirmed, with costs of this appeal to the respondents payable out of the estate.

DAVY, WARD and LEWIS, JJ., concurred.

Judgment affirmed, with costs to the respondents payable out of the estate.